OPINION OF THE COURT
Martin E. Smith, J.
The defendant was charged by felony complaint on November 13, 1998 with driving while intoxicated (DWI). He was arraigned on that felony complaint on December 3, 1998. Thereafter, a Broome County Grand Jury indicted him under indictment No. 99-156 on one count of driving while intoxicated as a class D felony and aggravated unlicensed operation of a motor vehicle in the first degree (AUO), a class E felony. The matter had been presented to the Grand Jury during the March 1999 term of the Grand Jury. The indictment was reported on March 5, 1999.
The defendant had not retained counsel prior to indictment. He did not respond to correspondence from the District Attorney’s Office prior to the Grand Jury presentation inquiring as to whether he had an attorney. He did not contact that office when notified by letter that his case would be presented to the Grand Jury. All those letters were sent to the address he had provided the local criminal court upon arraignment on the felony complaint and were not returned to the District At-? torney’s Office.
Broome County Court Judge Honorable Patrick H. Mathews sent a letter to the defendant at that same address, directing him to appear for arraignment on the indictment. That letter was dated March 9, 1999 and sought his appearance on March 19, 1999. The defendant did not appear for arraignment, and Judge Mathews issued a warrant for his arrest on March 24, 1999. On March 29, 1999, the court’s letter to the defendant was returned undelivered, with notations on it of “attempted unknown” and “not here anymore wrong address.”
On April 16, 1999, the defendant was interviewed by the Broome County Public Defender’s Office. He qualified for representation by that office. By letters dated April 19, 1999, that office advised Honorable John McEnaney, Town of Fenton Justice, of their representation of the defendant, “who stands charged in your Court with Driving While Intoxicated.” The letter requested copies of the felony complaint(s) and “rap *221 sheet” be provided to the Public Defender. That letter was “xc’d” to the District Attorney’s Office. A second letter of the same date was sent to Judge McEnaney (also “xc’d” to the District Attorney). That letter, of a different format, indicated the Public Defender would be representing the defendant, “who stands charged in your Court with Aggravated Unlicensed Operation 3°; and three traffic infractions.” The letter requests copies of the accusatory instruments, and makes various discovery requests and requests for hearings. The third letter of the same date is addressed to the District Attorney. It advises that the Public Defender represents the defendant and requests that no law enforcement personnel have any contact with the defendant without counsel being present. Á handwritten notation in the heading of the letter reads, “DWI, AUO 3°, 3TI, Fenton.” It is signed by the defendant and the Assistant Public Defender assigned to the case.
The “Divestiture to Superior Court” form sent by the Fenton Court to the Broome County Court Clerk was received by the latter on April 8, 1999. That form notes the indictment number, but is itself undated. It lists as charges “held for action of the grand jury” the following: “1227.1 (Consump. of ale MV; 1128.a (move from lane unsafely); 511.1A (AUO 3rd); 1192.3 (DWI); 1180.A (speed).” It forwards the felony complaint and various other documents.
The indictment was assigned to this court pursuant to the Individual Assignment System on March 29, 1999. On September 29, 1999 the defendant was arrested on Judge. Mathews’ warrant. He was released on his own recognizance on September 30, 1999. On October 5, 1999 he was arraigned on the indictment. He appeared with his attorney, and his release on his own recognizance was continued. The court received a preplea presentence report on December 17, 1999. That report recommended a State prison sentence. It detailed the defendant’s lengthy criminal record, abuse of alcohol and alcohol-related offenses. It surmised, “this incident in which Mr. Bennett is presently involved is not his first time behind the wheel whether drunk or sober since [his] 1994 revocation. Therefore, it is considered that Mr. Bennett is at [sic] extreme risk to society.” It further noted he is “at high risk to re-offend.”
With this report as background, a conference was held on January 5, 2000 with counsel for the defendant and the Assistant District Attorney assigned to the case. A proposed disposition, which the court indicated would be acceptable, was that Mr. Bennett plead guilty to AUO in the first degree and DWI as a D felony and be sentenced to U/s to 4 years in State prison.
*222 No pretrial motions were filed before or after the conference. There is no indication that any demands for discovery were made.
On January 24, 2000, the defendant entered a plea of guilty to both counts as charged in the indictment, on the understanding that the plea to the DWI as a D felony would be reduced to an E felony following the defendant’s requested adjournment, at sentencing. Sentencing was adjourned until February 10, 2000. On that date, the defendant requested a further adjournment.
By notice of motion dated February 17, 2000, the defendant sought to vacate his guilty pleas and sought dismissal of the indictment. The motion erroneously sought to vacate the pleas pursuant to CPL 330.30 (1), which governs motions to set aside verdicts. The motion for dismissal is on statutory speedy trial grounds.
The People filed their opposition to both motions by way of an undated affidavit and letter memorandum of February 28, 2000. By letter {not a motion and affidavit) dated February 29, 2000, the defense requested the court to inspect the Grand Jury minutes in this case. The People filed their opposition, urging waiver of his rights to challenge the Grand Jury minutes by virtue of his guilty plea. Both parties submitted additional correspondence on the various issues. The defense framed one such letter (Mar. 13, 2000) as a motion to dismiss in the interests of justice pursuant to CPL 210.40 (1) (e). By letter of March 14, 2000, the People opposed the previously filed motions to dismiss on speedy trial grounds and in the interest of justice, noting their reliance on their February 28, 2000 and March 1, 2000 responses. The court heard arguments on the motion to vacate the guilty plea on March 24, 2000. At that time, that motion and that motion only, was granted. The matter, essentially being back to “square one,” the parties were given leave to submit motions and any further arguments on the motions raised thus far, in particular, the speedy trial and interests of justice motions.
The defense has filed no additional motions. The court deems all its prematurely filed motions as properly filed following the court’s decision to vacate the guilty plea. The prosecutor has asked the court to reconsider its decision to vacate the guilty plea in a letter dated April 5, 2000, which letter also serves as the People’s formal response to the motion to dismiss in the interests of justice.
Preliminarily, the court declines to reconsider its decision to vacate the guilty plea. Although guilty pleas should be *223 protected from indiscriminate potshots (People v Frederick, 45 NY2d 520, 525), prosecutors should not be protected from egregious conduct before the Grand Jury, particularly where there has been a pattern of such behavior. In this case, the court, in exercising its discretion, took this latter concern into account.
In the final analysis, it can easily be said that defense counsel was ineffective for not making a pretrial motion to inspect the Grand Jury minutes under the circumstances, as they had come to be known by virtually the entire local bar, including defense counsel here. Likewise, as this court made clear in People v Abood (Broome County Ct, bench decision, Feb. 22, 2000), the prosecutor was under an affirmative duty, since the first decision regarding these Grand Jury instructions in June 1999, to alert the court as to all such presentations. Having failed to have done that, the interests of justice do not weigh on the side of protecting the finality of guilty pleas, but rather, on the side of exposing impropriety by the prosecution and protecting the integrity of the Grand Jury process in general, as well as in the particulars of this case.
However, we do note that the gist of the People’s argument, that defense counsel must have or should have known that this case was one of the cases with the “tainted” Grand Jury instructions, only supports the conclusion that defense counsel could be deemed ineffective for having failed to have made a motion that clearly would have resulted in dismissal of the indictment. That said, the court in one respect is merely preempting the inevitable: had defendant been sentenced on this indictment, and later sought by way of a GPL 440.10 motion that the judgment of conviction be vacated based on ineffectiveness of trial counsel, that motion necessarily would be granted. (“[A] showing that counsel failed to make a particular pretrial motion generally does not, by itself, establish ineffective assistance of counsel * * * To prevail on a claim of ineffective assistance of counsel, it is incumbent on defendant to demonstrate the absence of strategic or other legitimate explanations for counsel’s failure to request a particular hearing. Absent such a showing, it will be presumed that counsel acted in a competent manner and exercised professional judgment” [People v Rivera, 71 NY2d 705, 709].) In this case, defense counsel had everything to gain and nothing to lose by making a motion to dismiss the indictment. Since the withdrawal of the guilty plea was in this court’s discretion to grant, under the circumstances of this case, it deemed withdrawal ap *224 propriate and, given the over-all background against which this case is framed, compelling. Moreover, even if trial counsel’s failure to file pretrial motions was not enough to conclude defense counsel’s ineffectiveness, this court is offended by the manner in which the prosecutor has persistently attempted to conceal from the court the nature of the instructions given to the Grand Jury and the extent to which they have been given.
Thus, the pleas having been vacated, the following motions are before the court: for dismissal of the indictment, based on the improper Grand Jury instructions; dismissal on statutory speedy trial grounds; and dismissal in the interests of justice.
The defendant’s speedy trial motion alleges that the defendant was arrested for driving while intoxicated on November 11, 1998 (sic) and that upon arraignment on October 5, 1999, the People announced their readiness. Thus, defendant’s speedy trial motion on its face indicates a clear entitlement to a dismissal of the charge, and the burden shifts to the People to controvert the allegations (see, People v Lusby, 245 AD2d 1110; People v Lomax, 50 NY2d 351, 357). The People do not allege in their responsive papers that the defendant’s motion was deficient; they responded to the motion.
The People’s response indicates defendant’s arrest on November 13, 1998. It alleges that readiness was stated in a Memorandum, filed with the Broome County Court Clerk on March 8, 1999. Although they acknowledge that defendant was without counsel at this time, they do not claim to have mailed any statement of readiness or this Memorandum to the defendant at any time. They do not allege that they made an in-court statement on the record of their readiness at any time prior to October 5, 1999.[1]
In People v Carter (91 NY2d 795), the People had satisfied their readiness obligation by announcing their trial readiness in open court and notifying defendants of their readiness in a written communication, neither of which was done here, according to the prosecutor’s affidavit.
To be effective, a statement of readiness must be communicated on the record at a time when the People are truly ready to proceed. In Carter (supra), the People filed the. indictment, announced their readiness on the record and attempted *225 to notify defendants by sending letters to their last-known address.[2] The People here allege no mailing to the defendant of the readiness statement, nor announcing, on the record, their readiness. Their filed statement of readiness, the Memorandum referred to above, was sent to an attorney (Public Defender’s Office) at a time when the attorney did not represent the defendant. The notice itself gave no indication that the defendant was so represented. The Memorandum, as a notice, is a nullity.
This Memorandum is a list of all cases indicted for that term of Grand Jury. It lists 38 defendants. In column format, next to each defendant’s name follows a shorthand notation of a charge, his or her attorney, the initials of the prosecuting Assistant District Attorney, and the local court of origin. As attorney, the list shows either a private attorney by name, or “public defender.” Next to six defendants’ names, the attorney column is blank, that is, that defendant is not represented by any attorney. The attorney column for the defendant’s name is blank.
In essence, this Memorandum serves as 38 separate statements of readiness, and, for the District Attorney, is an efficient means of providing notice of readiness to each attorney. The notice “cc’s” the Broome County Court Clerk, the two County Court Judges, the Broome County Jail, the Public Defender, the local criminal courts “listed above,” and “all defense attorneys listed above.” No “cc” goes to the defendants for whom no attorney is listed.
It appears clear from the language of Carter (supra) and People v Goss (87 NY2d 792, 795) that a filed statement of readiness without an accompanying mailing to the defendant or his or her attorney is not an effective statement of readiness.
The suggestion that the Memorandum sent to the Public Defender’s Office should be deemed an effective communication, because that office eventually took on representation of the defendant, is specious. Such an argument would in every case require that a private attorney or Public Defender search back through any and all mail not relevant to a particular defendant in order to “find” the relevant notice, or dictate the manner in which each office files papers. To be sure, in this *226 case, the Memorandum prepared by the District Attorney allows the Public Defender to make 13 copies of it: one to place in each file of the client/defendant that office represented, according to the Memorandum. To suggest that an attorney’s office must keep a document in a manner other than as is relevant to its clients, or for its business purposes, is to suggest that the District Attorney may dictate to any attorney that it must keep and maintain any mail it receives from it, whether relevant to a client or not, on the off-chance that it may become relevant someday. An attorney’s office need not maintain records for other than its own clients or business purposes. It need not keep this Memorandum on file for its relevance beyond that which it has to that attorney at the time provided. This court will not impose such a burden on any attorney’s office. It can safely be stated that as to this defendant, the Public Defender was not provided with this Memorandum at any point where it would have borne some relevance to this defendant.[3] No attempt was made to serve defendant with the readiness statement, as already noted.
A statement of readiness was filed with the court and served on the defendant’s attorney on October 5, 1999 when the defendant was arraigned on the indictment. Assuming for the moment the validity of that statement, People v Fields (262 AD2d 793), cited by the People, applies. The prereadiness delay of 326 days is reduced by 157 days. Under this scenario, the People would be charged with 169 days of prereadiness delay.
The defendant’s premature motion to inspect the Grand Jury minutes and dismiss the indictment, initially made on February 17, 2000, was, of course, deemed effective once the guilty plea was vacated on March 24, 2000. The People did not provide the Grand Jury minutes to the court until May 10, 2000. The court finds that a reasonable time in this case from March 24, 2000 for ordering and producing the minutes, to be 31 days, that is, until April 24, 2000. Thus, the time from April 24 until May 10, 2000 is chargeable to the People as postreadiness delay of 16 days (see, People v McKenna, 76 NY2d 59). Since the People had 181 days from November 13, 1998 to be ready for trial, and have exceeded that time by four days, the motion to dismiss for failure of the People to be ready within six months must be granted under this analysis.
*227 However, this court finds that the October 5, 1999 statement of readiness was invalid for the following reasons. By way of background, the reader should refer to the decision of this court in People v DeVaul (Broome County Ct, June 25, 1999). That case was dismissed due to the highly improper and prejudicial instructions given to the Grand Jury in that driving while intoxicated presentation. That case had been presented to the Grand Jury on February 5, 1999. As of the writing of that decision, neither the court nor any defense attorney would have been made aware that the same instructions were given in all cases that term, as well as all following terms through June 25, 1999, particularly since those instructions had not been provided to the court in any other case where a motion to inspect had been made. It was not until August 16, 1999 that the court became aware of two more cases, People v Arnold (Broome County Ct) and People v Lewis (Broome County Ct), where the improper instructions had been given in another term. In fact, at least until August 16, 1999, notwithstanding the court’s decision in DeVaul in June, the prosecutor continued to withhold the offending instructions even though motions to inspect were pending in several other cases.
This case, presented as it was on March 5, 1999, suffers the same defects as DeVaul, Lewis and Arnold (supra). Thus, the indictment is dismissible pursuant to CPL 210.35, for the reasons as stated in DeVaul, and the other cases referenced herein.
As of June 25, 1999, the prosecutor had an affirmative duty to alert the court to all the other defective Grand Jury presentations of this kind, and didn’t. Moreover, as this court determined in People v Abood (supra), it was improper to stand by silently, waiting to see if the defendant would plead guilty, and thus avoid inspection of the Grand Jury minutes. (That decision noted, “arguably, [the prosecutor] attempted to conceal the improprieties and did not go forward even to re-present this case until she learned, during the course of a hearing on August 16, 1999 that the Court now knew of the pattern of improper instructions given in all DWI cases in all terms from February, 1999 until June, 1999. [See decisions of this Court in People v. DeVaul, June 25,1999; People v. Arnold, September 13, 1999; and particularly People v. French, Jan. 27, 2000; People v. Paul Lewis, (bench decision) August 16, 1999; People v. Butchko, (bench decision) February 14, 2000].”)
This case, being as it was a “warrant” case, should not have distinguished it. It should have been re-presented at the earli *228 est moment. It was improper to allow the warrant to stand, knowing as of June 25, 1999, that this case, as the others, was fatally flawed. Yet the prosecutor not only did not go forward to re-present the case, she knowingly allowed the warrant to stand on this defective indictment. This case could easily have been re-presented in order to obtain a superceding indictment immediately following the June 25, 1999 DeVaul decision (supra). (Indeed, in Abood [supra], the defendant rejected the plea offer on July 8, 1999 and the District Attorney re-presented the matter on August 25, 1999.) [4]
Arguably, perhaps defense counsel could have figured out that this case was part of the “tainted” March 5 Grand Jury presentations as of September 13, 1999, the date of the decision in the case of William Arnold, his client. But it is patently clear that the prosecutor knew as of June 25, 1999 that all her March 5th presentations (and any other terms wherein she gave such instructions) were subject to dismissal. Yet, as of that date, she failed to alert the court, failed to re-present all those cases, and attempted to secure guilty pleas on cases such as this: where motions were not made.
This court holds that the People’s statement of readiness of October 5[5] was a nullity. The court distinguishes People v Gutter (222 AD2d 330, 331), holding that a statement of readiness is not retroactively nullified, nor is already excluded time rendered includable when an indictment as to which the statement is made is subsequently dismissed for insufficiency of the Grand Jury evidence. The question of sufficiency of the evidence is not addressed here. In distinguishing Gutter, it is important to acknowledge that a prosecutor may honestly misjudge the sufficiency of evidence in any given case, and so the validity of the indictment based on that evidence, until reviewed by the court. Here, however, any misperception about the validity of this indictment was eradicated on June 25, 1999, when the prosecutor received the first decision dismissing an indictment where the same instructions were given. At that time, the prosecution knew that all such indictments were in fact defective.
Here, the question is whether the People should be allowed to assert that they “are ready” for trial at a time when they know that the indictment is fatally defective due to the *229 improper conduct by the prosecutor before the Grand Jury that returned the indictment. This court finds the People cannot pronounce their readiness under the circumstances, and charge them with the entire period from the filing of the felony complaint on November 13, 1998 until the defendant entered his plea of guilty (since vacated) on January 24, 2000. That time amounts to 437 days. Excluding the time the defendant was not represented by counsel through no fault of the court, from November 13, 1998 until April 19, 1999 (157 days) the total time chargeable to the People is 280 days, that is, far in excess of the six months, 181 days in this case, in which they had to be ready for trial.
The defendant’s motion to dismiss indictment No. 99-156, on the ground that the People were not ready for trial within six months of the commencement of the criminal action, is granted.
Given the court’s determination, the issue of whether due diligence should or should not apply with respect to efforts to effect the warrant need not be addressed.
Finally, the motion to dismiss the indictment in the interests of justice is likewise granted. The court rejects the People’s position that the only argument in support of this motion is the defective Grand Jury instructions in the March 5, 1999 Grand Jury presentation of cases. In so doing, the court also rejects the conclusion that this one ground does not amount to “exceptionally serious misconduct” as to warrant a dismissal of the indictment in the interest of justice pursuant to CPL 210.40 (1) (e). The court will not examine this case in a vacuum. Given the pattern of impropriety noted in this and the related cases, the issue is not solely that improper instructions were given to this Grand Jury that returned the indictment. Under the circumstances, the court must examine, “what did the prosecutor know, and when did she know it?” As stated above, once the DeVaul decision (supra) was made in June of 1999, the prosecutor should not have sought to proceed on any of these indictments. In that light, the court does find the improper conduct to be exceptionally serious misconduct of law enforcement personnel in the prosecution of the defendant, and finds such conduct to have a grave negative impact on the confidence of the public in the criminal justice system such that the dismissal of the indictment could only have a positive impact upon the confidence of the public in the criminal justice system.
The indictment is dismissed.

. The defendant’s motion asserts the People “announced” their readiness on October 5, 1999. The People’s response does not make such a claim. The record of the proceedings on that date likewise does not reflect an in-court announcement of readiness.

. The prosecutor’s undated (February) affidavit makes no allegation that at any time relevant to the issues here she knew that Judge Mathews’ letter had been returned.

. In addition to the speedy trial ramifications, this has bearing on the defense’s lack of awareness that this case was one of a number of cases presented with the same “set” of improper instructions during a particular term.

. Superceding indictments were also sought that same date in French, People v Deubler (Broome County Ct) and Butchko (supra).

. The statement of March 8, 1999, if otherwise valid, ceased to be so as of June 25, 1999.